UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH H.,[1] | ) |
| | ) |
| Plaintiff, | ) Case No. 19-cv-6201 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMDORANDUM OPINION AND ORDER**

Plaintiff Kenneth H. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"), 42 U.S.C. §§ 416(i), 423. Kenneth has filed a motion for summary judgment asking the Court to reverse or remand the Administrative Law Judge's ("ALJ") decision. After careful review of the record and the parties' respective arguments, the Court concludes that substantial evidence supports the ALJ's residual functional capacity assessment ("RFC") and the ALJ properly assessed Kenneth's subjective allegations. The Court therefore denies Kenneth's motion for summary judgment.

**Background**

Kenneth, who was born in September 1961, has severe obesity, degenerative disc disease of the cervical and lumbar spine, depression, and anxiety. On May 5, 2014, Kenneth filed an application for disability alleging disability beginning on September 20, 2017. The claim was initially

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

denied on November 12, 2014, and then denied upon reconsideration on May 12, 2015. Thereafter, Kenneth appeared and testified at a hearing on June 30, 2016 in front of an ALJ. The ALJ denied Kenneth's request for disability insurance on September 23, 2016. The Appeals Council denied Kenneth's request for review, which was the final decision under 42 U.S.C. § 405(g).

On his first appeal to the federal district court, another district judge remanded the proceedings on July 18, 2018. The court's remand concerned the ALJ's failure to sufficiently review subsequent medical evidence from after December 31, 2012, the last date insured. On December 17, 2018, the Appeals Council remanded for further proceedings. At a subsequent hearing held on June 4, 2019, Kenneth testified in front of an ALJ. The ALJ issued an unfavorable decision on July 11, 2019. Kenneth then filed this appeal over which this Court has jurisdiction. *See* 20 C.F.R. § 416.1484(d). The parties agree that the insured period at issue is October 23, 2012 through December 31, 2012, based on Kenneth's earlier applications for disability insurance.

**Judicial Standard of Review**

Courts uphold an ALJ's disability determination if the ALJ uses the correct legal standards, the decision is supported by substantial evidence, and the ALJ builds an accurate and a logical bridge from the evidence to the conclusion. *Jeske v. Saul,* 955 F.3d 583, 587 (7th Cir. 2020); *see also Brumbaugh v. Saul,* 850 Fed.Appx. 973, 977 (7th Cir. 2021) ("the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill,* ___ U.S. ___, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). When substantial evidence supports the ALJ's determination,

courts must affirm the decision even if reasonable minds could differ as to whether a claimant is disabled. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citation omitted). In reviewing an ALJ's decision, federal courts do not reweigh the evidence or substitute their judgment for that of the ALJ. *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022).

**Disability Determination Standard**

A person is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has set forth a five-step sequential evaluation for determining whether an individual is disabled. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). This evaluation considers whether (1) the claimant has engage in substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's severe impairment or combination of impairments is one that the Commissioner considers conclusively disabling as enumerated in the regulations; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work; and (5) the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520.

**ALJ's Disability Determination**

On remand, the ALJ considered Kenneth's medical evidence after that date last insured, December 31, 2012, along with evidence submitted from before December 31, 2012. At step one of the sequential evaluation, the ALJ found Kenneth had not engaged in substantial gainful activity since the alleged onset date of September 20, 2007 through the date last insured. Next, the ALJ determined Kenneth had the severe impairments of obesity, degenerative disc disease of the cervical

and lumbar spine, depression, and anxiety. At step three, the ALJ concluded Kenneth did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments as outlined in the regulations. *See* 20 C.F.R. § 404.159(f)(2).

At step four, the ALJ decided Kenneth had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), limited to occasionally climbing ramps and stairs, occasionally balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds. In addition, the ALJ found Kenneth could frequently reach overhead with bilateral upper extremities, frequently handle with bilateral upper extremities, and frequently finger with bilateral upper extremities, but could never operate a motor vehicle for commercial purposes. The ALJ also reasoned Kenneth was able to understand, carry out, remember, and perform simple, routine, and repetitive tasks, but not at a production rate pace, instead he could make only simple, work-related decisions with the ability to adapt only to routine workplace changes. Further, the ALJ concluded Kenneth was occasionally able to interact with supervisors and coworkers, but was to have superficial, non-transactional contact with the general public.

Based on the testimony of the vocational expert, at step five, the ALJ concluded that through the date of last insured, considering Kenneth's age, education, work experience, and RFC, Kenneth was capable of making a successful adjustment to work that existed in significant numbers in the national economy. Specifically, the vocational expert concluded Kenneth would be able to perform the requirements of unskilled, light occupations, such as a cleaner/housekeeper or line attendant. The ALJ then found Kenneth was not disabled.

**Analysis**

*Mental RFC*

Kenneth first contends the ALJ erred by not properly evaluating his mental RFC at step four

of the sequential analysis. He argues the ALJ violated the narrative requirements of Social Security Ruling ("SSR") 96-8p, which requires ALJs to use a narrative discussion to describe how the evidence supports their conclusions. SSR 96-8p "emphasizes that the ALJ must identify an individual's functional limitations before expressing the RFC in terms of exertional levels (i.e., sedentary, light, medium, heavy, and very heavy)." *Jeske*, 955 F.3d at 595. Kenneth specifically argues the ALJ did not sufficiently explain the conclusion that he was able to occasionally interact with supervisors and coworkers and could tolerate superficial, non-transactional contact with the general public. Despite his argument to the contrary, the ALJ met the narrative discussion standard when examining Kenneth's mental RFC, as addressed immediately below.

To start, in determining Kenneth's mental RFC, the ALJ discussed a December 2012 progress report of Dr. Immirne Laguette, M.D., who noted normal mental status findings when Kenneth presented for a psychiatry referral. These findings included that Kenneth was cooperative, had an appropriate mood and affect, and normal judgment. Later in December 2012, psychiatrist Dr. Samina Khattak , M.D., noted Kenneth's anxious, depressed mood and affect, as well as his restless behavior. Dr. Khattak also observed Kenneth's cooperative attitude, along with his normal thought content, thought process, and judgment. Likewise, in August 2013, Kenneth's therapist, Dr. Barbara Thomas, Ph.D., noted Kenneth's depression, anxious mood, and fidgety behavior, but also observed that he was alert and oriented, had a logical thought process, and had a cooperative attitude. At his numerous follow-up sessions in 2013, Dr. Thomas consistently noted Kenneth's appropriate mood and affect, cooperative attitude, and normal judgment. Moreover, from October 2015 through March 2016, psychologist Dr. Sandra Novak, Psy.D. noted Kenneth's normal mental status, cooperative attitude, and normal judgment, but also noted that he was mildly or moderately depressed and anxious.

5

The ALJ further considered the opinion of primary care physician Dr. Nicholas Rizzo, M.D., who is not a psychiatrist or psychologist. The ALJ accorded Dr. Rizzo's opinion little weight based on his lack of expertise and his opinion's inconsistencies with the psychiatric and psychological reports in the record. To clarify, in November 2010, Dr. Rizzo opined that Kenneth's anxiety "is so severe in degree that it markedly limits his ability to function in society" and that "he is unable to hold a work position of any type." The ALJ properly gave more weight to the mental health care providers than to Dr. Rizzo's opinion due to Dr. Rizzo's lack of specialization. *See* 20 C.F.R. § 404.1527(c)(5).

After the ALJ considered the evidence in the record in relation to Kenneth's mental RFC, the ALJ concluded:

> [I]n consideration of the claimant's allegations that he gets confused when trying to follow written instructions; and that he is unable to concentrate long enough to follow spoken instructions, and in consideration of the claimant's struggles with anxiety, depression, stress, and anger, I limited the claimant to no more than occasional interaction with supervisors and coworkers; and superficial non-transactional contact with the general public. As well, I found the claimant able to understand, carry out, remember and perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); involving only simple, work-related decisions with the ability to adapt only to routine work place changes. The objective clinical evidence revealed the claimant exercised well enough judgment to make sensible decisions, appropriate in social situations, despite his exhibiting restless behavior at times. Also his symptoms were controlled with his current medicine regimen[.]

(Decision, July 11, 2019, at 1771) (internal citations omitted).

In his summary judgment motion, Kenneth argues the ALJ did not sufficiently explain why he could occasionally interact with supervisors and coworkers and could tolerate superficial, non-transactional contact with the general public. Kenneth attempts to rebut the ALJ's conclusion with his own subjective hearing testimony where he stated he had bad dreams and was afraid of anyone in uniform, including police. Kenneth testified that due to his depression, he needs to lie down,

6

sometimes for an entire day. Also, he stated that he was nervous in small crowds, had problems dealing with strangers, and that stress and changes in routine caused him to panic. In addition, Kenneth testified he could not concentrate for more than fifteen minutes at a time and that he had memory issues.

Throughout the ALJ's decision, he considered Kenneth's subjective testimony, along with the medical evidence when making his findings. The ALJ, however, gave more weight to the medical evidence than to Kenneth's subjective testimony that conflicted with the medical evidence. The Court defers to the ALJ's credibility determinations and recognizes that Kenneth's subjective statements, taken alone, are not conclusive evidence of disability. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Rather, the relevant evidence as a whole, including that Kenneth's anxiety and depression were controlled through medication, supports the ALJ's conclusion. As such, the ALJ fulfilled SSR 96-8p and built a logical bridge from the evidence to his conclusion limiting Kenneth to occasional interactions with supervisors and coworkers and superficial non-transactional contact with the general public. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021).

Relatedly, Kenneth argues the ALJ's mental RFC failed to capture his moderate concentration deficiencies. In relation to concentration, persistence, or pace, the ALJ concluded Kenneth had moderate difficulties based on Kenneth's own statement that he had difficulty with concentration, following instructions, and finishing work. The ALJ, however, also considered medical evidence that Kenneth was alert, had normal judgment, appropriate thought processes, demonstrate good concentration, and made sensible decisions, despite Kenneth's anxiety and depression. Meanwhile, even if the ALJ's mental RFC assessment was in err, the error was harmless because Kenneth has not suggested what kind of work restrictions would address his limitations in concentration, persistence, or pace. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (per

7

curiam).

*Physical RFC*

Next, Kenneth argues the ALJ erred by not properly evaluating his physical RFC. As discussed, the ALJ determined Kenneth had the RFC to perform a range of light work, including occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs, but not climbing of ladders, ropes, or scaffolds. Also, Kenneth had the ability for frequent bilateral reaching, handling, and fingering, but no commercial driving. He could perform simple, routine, repetitive tasks, and simple work-related decisions, but could not perform at a production-rate pace, such as in assembly-line work. The ALJ's findings also included that Kenneth could adapt to routine workplace changes.

In determining Kenneth's physical RFC, the ALJ discussed two December 2012 medical examinations showing normal findings except for body mass indices (BMI) of 39 and 40, and that Kenneth had elevated blood pressure. Other medical evidence included an August 2013 report by Dr. Abed Rahman, M.D., pain specialist in the Cook County Health and Hospital System. In that report, Dr. Rahman observed that Kenneth had full strength throughout his arms and legs. Dr. Aditya Shah, M.D., a primary care doctor, observed Kenneth's normal gait and muscle strength in July 2015. Additional evidence the ALJ reviewed included the April 2013 CT scans of Kenneth's back and neck that showed multilevel disc degeneration and narrowing. The ALJ concluded that this imaging supported Kenneth's allegations of back and neck pain, but not to the level of severity that would preclude him from performing basic work activities.

The ALJ also considered the June 2016 opinion of primary care physician Dr. Kevin Loughry, D.O., who concluded Kenneth could carry and lift up to twenty pounds occasionally and ten pounds frequently. Dr. Loughry opined Kenneth had up to 20% to 50% reduction in his

8

standing/walking capacity and had more than 50% reduced capacity for climbing, twisting, squatting, and crawling. The ALJ accepted Dr. Loughry's opinions as to Kenneth's exertional capacity because it was supported by medical evidence in the record. The ALJ, however, concluded Dr. Loughry's opinion about Kenneth's postural limitations was not supported by other medical evidence in the record.

Kenneth argues that the ALJ independently interpreted objective evidence without an expert's input. The Court disagrees. This is not a case where the ALJ interpreted test results, but instead he relied upon the conclusions of a pain specialist, a primary care doctor, and medical conclusions of CT scan results, along with opinion evidence provided by a primary care physician. Thus, Kenneth's "playing doctor" argument is misplaced. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021).

Furthermore, Kenneth asserts the ALJ did not address how his obesity interacted with his disc disease when concluding that he was capable of standing and walking for six hours a day. Although obesity is not a standalone disabling impairment, ALJs must still consider its impact when evaluating the severity of a claimant's other impairments. *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). Here, the ALJ did consider Kenneth's obesity when evaluating Kenneth's other impairments. Specifically, the ALJ considered Kenneth's obesity in the context of musculoskeletal, respiratory, and cardiovascular impairments under Listings 1.00Q, 3.00I, and 4.00F. Moreover, the ALJ considered the extent to which Kenneth's obesity affected his ability to function and perform work-related activities and concluded that Kenneth's obesity has the effect of aggravating his other medical conditions, specifically his degenerative disc disease. After considering Kenneth's combined impairments, the ALJ based his conclusion that Kenneth could stand and walk on medical evidence that his muscle strength and tone were normal, specifically Dr. Aditya Shah's July 2015 report, and

Dr. Abed Rahman's August 2013 report that Kenneth had full strength throughout his arms and legs. Based on this analysis, Kenneth's argument that the ALJ did not sufficiently address how his obesity interacted with his disc disease is without merit.

Kenneth further maintains the ALJ did not take into account his testimony in relation to his manipulative limitations when concluding that he could frequently reach overhead with bilateral upper extremities, frequently handle with bilateral upper extremities, and frequently finger with bilateral upper extremities. More specifically, Kenneth testified that he had numbness and tingling in his fingers, loss strength in his hands causing him to drop things, and that he could not hold on to items for more than 10-15 minutes at a time. Despite Kenneth's argument, the ALJ did consider his testimony, but contrasted it to medical evidence that his muscle strength and tone were normal, along with evidence that at his face-to-face interview with the field office in August 2014, the interviewer did not observe Kenneth having any difficulty using his hands or writing. Thus, substantial evidence supports the ALJ's conclusion that Kenneth had the ability to frequently reach, handle, and finger.

In sum, the ALJ's assessment of Kenneth's physical RFC is supported by substantial evidence in the record. Moreover, Kenneth has failed to establish that the ALJ did not apply the correct legal standards or failed to build a logical bridge from the evidence to his conclusions.

*Credibility of Subjective Allegations*

Last, Kenneth maintains that the ALJ did not adequately assess his credibility in relation to his subjective allegations. It is well-settled that as long as an ALJ gives specific reasons supported by the record, courts will not overturn credibility findings unless they are patently wrong. *Deborah M.*, 994 F.3d at 789. Patently wrong means that the ALJ's decision lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014).

10

Kenneth first argues the ALJ contrasted his subjective allegations with only objective evidence in relation to his neck and back pain. The ALJ, however, based his decision on more than the April 2013 CT scans of Kenneth's back and neck showing multilevel disc degeneration and narrowing. Specifically, the ALJ took into consideration the medication Kenneth used to manage his neck pain. The ALJ also considered Kenneth's daily activities when assessing his subjective complaints of pain, concluding that Kenneth had the ability to function independently outside of his home. These activities including attending church services on a daily basis, cleaning and doing small repairs, and shopping. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated."). Accordingly, the ALJ's determination is supported by more than objective medical evidence, keeping in mind that objective medical evidence is a useful indicator about the intensity and persistence of a claimant's symptoms and the effect of those symptoms. *See* 20 C.F.R. § 404.1529(c)(2).

Next, Kenneth contends the ALJ did not explain which of his allegations of limitations were consistent with the record and which allegations were not consistent. When evaluating credibility, an ALJ need not specify which statements were not credible. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). Therefore, this argument is misplaced.

Kenneth's remaining arguments about the ALJ's credibility determinations are equally without merit, including that the ALJ did not take into account his testimony that he needs to lie down due to his depression. Although ALJs are not required to discuss every piece of evidence in the record, *see Deborah M.,* 994 F.3d at 788, here, the ALJ discussed Kenneth's son reporting that he had to make his dad get out of bed and examined Kenneth's testimony that he would remain in bed two to three days a week due to his depression. Meanwhile, the ALJ compared Kenneth's subjective

11

statements to medical evidence, including Kenneth's treating physicians, in relation to his mental impairments and concluded that Kenneth's statements about the intensity and persistence of his symptoms were not entirely consistent with the medical evidence.

In the end, after careful review of the record and the parties' respective arguments, the Court concludes that substantial evidence supports the ALJ's RFC and properly assessed Kenneth's subjective allegations.

**Conclusion**

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment [25]. The Court affirms the ALJ's decision. Civil case terminated.

IT IS SO ORDERED.

Date: 7/5/2022

Entered: 

SHARON JOHNSON COLEMAN
United States District Court Judge